**Karl Christopher HARRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–10–00376–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 5, 2012.

---

Nicole DeBorde, Houston, TX, for Appellant.

Donald W. Rogers Jr., Assistant District Attorney, Houston, TX, for State.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

A jury convicted appellant, Karl Christopher Harris, of the second degree felony offense of failure to comply with the sex offender registration requirements.[1] After it found the allegations in an enhancement paragraph true, the trial court assessed punishment at twenty years' confinement. In three issues, appellant contends that: (1) the State did not present sufficient

---

1. *See* TEX.CODE CRIM. PROC ANN. art. 62.102(b)(3) (Vernon 2006).

evidence that he intentionally and knowingly failed to verify his sex offender registration information within the required time period; (2) the trial court improperly punished him for exercising his right to trial by ultimately assessing punishment at twenty years' confinement after previously offering, in a pre-trial hearing, a sentence of four years' confinement if appellant pleaded guilty to the charged offense; and (3) he is entitled to a new trial because the transcript of the pre-trial hearing at which the trial court made its plea offer is unavailable.

We affirm.

## Background

In 1992, appellant pleaded guilty to the offenses of aggravated kidnapping with the intent to violate or sexually abuse and aggravated sexual assault. Appellant's punishment was assessed at twelve years' confinement. After appellant was released from confinement in February 2004, he was required initially to register as a sex offender with the Houston Police Department ("HPD") and to verify his registration information every ninety days for life. *See* TEX.CODE CRIM. PROC. ANN. art. 62.051(a) (Vernon Supp. 2011) (requiring any person with "reportable conviction" to register with local law enforcement agency of municipality in which person intends to reside for more than seven days), art. 62.058(a) (Vernon 2006) (requiring person convicted of two or more "sexually violent offenses" to verify registration information every ninety days). Appellant initially registered with HPD on February 26, 2004, and his last successful verification was on May 13, 2008.

HPD Officer J. Suarez, who works in the Juvenile Sex Offender Compliance Unit, was assigned appellant's case after appellant missed his scheduled verification date in August 2008. Officer Suarez testified that an offender who is required to report for verification quarterly, such as appellant, has a fifteen-day period during which he must report to HPD. He stated that during the verification process, offenders complete an "update form," notifying HPD of whether they have changed jobs, phone numbers, vehicles, or home addresses. When offenders verify their registration information, they are given documentation of the successful verification and are told their next verification date. Officer Suarez testified that when he verified his registration information on May 13, 2008, appellant received a notification that his next scheduled verification date was August 11, 2008.[2]

Officer Suarez also testified that when appellant initially began the registration and verification process in 2004, the sex offender registration office was located on the eleventh floor of HPD headquarters in downtown Houston. In "May or June" of 2008, the office moved to an HPD substation on Mykawa Road, and offenders were required to go to this location for all future verification appointments. Officer Suarez testified that the unit mailed letters to all of the offenders within its jurisdiction notifying them of the change in the office's location. He also stated that HPD placed signs on the eleventh floor of the downtown station notifying offenders of the

**2.** Officer Suarez testified that appellant's actual verification date was August 20, 2008, which was calculated using his birth date, and that he was allowed a seven-day grace period before and after that date. Thus, appellant's August 2008 verification compliance period was from August 13, 2008, to August 27, 2008. Officer Suarez testified that if the registration office does not have any times available for verification meetings during an offender's compliance period, it might schedule an offender's next verification meeting outside the period, which is why appellant's scheduled date was August 11, 2008.

move and that "officers at the [downtown] security desk were informed of the change of address and were given letters for anybody coming in so they would know the new address." Officer Suarez stated that appellant failed to report during his August 2008 verification compliance period. He testified that it is the offender's responsibility to report to HPD in person to verify his registration information and that it is not HPD's responsibility "to go find [the offender] so they can report."

On cross-examination, Officer Suarez testified that he could not provide the exact date that the registration office relocated. He stated that appellant's registration file did not indicate that appellant was informed at his May 13, 2008 verification meeting that his August verification meeting would occur at a different location. He also testified that appellant's file did not contain either a copy of the letter that HPD sent to offenders informing them of the office's relocation or a "green card" reflecting that appellant received the letter via certified mail. Officer Suarez also agreed with defense counsel that although signs were posted on the eleventh floor in the downtown station, offenders were always escorted up to that floor by an officer, and this would not have happened after the relocation occurred.

HPD Sergeant G.D. Kuschel, who was formerly in charge of the sex offender compliance unit, testified that he initially registered appellant after his release from confinement and informed appellant of his responsibility to verify his registration information with HPD every ninety days for life and of the consequences for failure to comply with the verification requirements. Sergeant Kuschel testified that, five days before the registration office actually moved, the office sent a letter to all sex offenders "[e]xplaining that [the office was] transferring the obligation of regis-

tration to the Juvenile Division at 8300 Mykawa Road." He stated that the office had approximately 1,500 letters to send, which is why the office did not use certified or registered mail. He further stated that some of the letters were returned to the office, and, if the office received a returned letter, the office put the returned letter in the offender's file. Appellant's file did not contain a returned letter. Sergeant Kuschel also testified that if an offender arrived for verification at the downtown station after the relocation, the officer working at the front desk would give the offender a copy of the letter that had been mailed. Sergeant Kuschel personally observed front-desk personnel give these letters to offenders who arrived at the downtown station. He stated that the front-desk personnel did not tell offenders that HPD would contact them at a later date with details regarding the new location. He also testified that offenders who called the office were informed of the new location.

On cross-examination, Sergeant Kuschel agreed that appellant's file did not contain a copy of the letter that HPD mailed, and he stated that he could not produce a copy of the letter for the jury. He further agreed that it was only after the office relocated that appellant "had a problem reporting."

Billie Jean Hopes, a civilian employee of HPD, testified that she worked in the sex offender registration department and that she had verified appellant's registration information "from time to time," including on May 13, 2008, appellant's last successful verification date. According to Hopes, the office had been planning to relocate for several years, and she would occasionally let offenders know that the office would eventually move to a new location. She could not remember if she told this to appellant when she met with him in May.

She stated that, after the relocation, she spoke with some offenders who originally reported to the downtown location for verification but were given an "acknowledgement form" by the front-desk personnel telling them to report to the new Mykawa location.[3]

Appellant testified on his own behalf. He stated that Hopes did not tell him at their May meeting that he should not report to the downtown station for his August verification date. He further testified that he never received any type of notice from HPD regarding the office's relocation. He stated that he went to the downtown station "around [August] 11th" and spoke with the front-desk officer, who swiped his I.D. card and told him to wait. After appellant waited for about ten or fifteen minutes, he informed the front-desk officer that he was there for sex offender registration. The officer told him that registration and verification no longer occurred at that station and that HPD would send him a letter with the details of the new location. This officer did not tell him the address of the new location, just that HPD would contact him at a later date. Appellant testified that, over the next few days, he made several attempts to call the office and Sergeant Kuschel, but no one ever answered and he never received any response. He testified that he never received any type of letter from HPD in the mail. He stated that, although he attempted to verify his registration information, he was unable to do so successfully because he "didn't know where to register" and he "was waiting until [he] got the physical address to go register."

On cross-examination, appellant acknowledged that he knew that he had to verify his registration information every ninety days. Appellant did not remember either the exact date that he went to the downtown station in August or the officer who was working at the front desk when he visited. He testified that he only went to the downtown location once, and he never returned and asked to speak to a sergeant or another officer about where he should go for verification. When asked what was "holding [him] back" from going to the downtown station a second time to get further information, appellant responded that he "was waiting on the letter."

The trial court held a pre-trial hearing on October 16, 2009. After the parties discussed plea bargain negotiations and the fact that appellant had rejected the State's offer of six years' confinement in exchange for a guilty plea, the trial court "strongly admonished" appellant regarding "enhanced punishment range, strict liability, [and] possible punishment evidence" and offered a sentence of four years' confinement in exchange for appellant's guilty plea. Appellant rejected this offer as well, and he informed the court that he wanted a jury trial. He also elected, in the event of a conviction, that the trial court assess punishment. The State then re-indicted appellant and added an enhancement paragraph.

After the jury found appellant guilty of the offense of failure to comply with the sex offender registration requirements, the State presented evidence during the punishment phase of the nature and circumstances of the two previous "reportable convictions" that led to appellant's

3. Hopes testified that these "acknowledgment forms" were also used when, for example, offenders attempted to report at a time when the office was closed. The front-desk personnel would complete the form, which would then be placed in the offender's file. Appellant's file did not contain an "acknowledgment form" reflecting that he attempted to register at the downtown location in August 2008.

duty to register. During the punishment phase argument, defense counsel requested that the court assess punishment "somewhere in the second degree [felony] range, minimum two, maximum [twenty]." The trial court found the allegations in the enhancement paragraph true, and assessed punishment at twenty years' confinement. Defense counsel did not object that this sentence was greater than the trial court's earlier plea offer, nor did he make any argument that the sentence was indicative of judicial vindictiveness.

While this case was pending on appeal, appellant moved this Court to abate the appeal because a portion of the reporter's record, a transcript of the October 16, 2009 hearing, was missing. We abated the appeal and ordered the trial court to hold "any necessary hearings" relating to the missing portion of the record.

Wong Lee, the substitute court reporter on October 16, 2009, submitted an affidavit to the trial court stating that he did not record any proceedings in this case on that date. He averred, "The reporter's record was not lost or destroyed; it was never made." He acknowledged that the court's docket sheet for October 16, 2009, included the notation "(OTR Wong Lee)," which generally indicates that the hearing was on the record, but he stated that these notations can be "entered in error some time after the hearing is over." He unequivocally stated that neither he nor any other court reporter recorded the October 16, 2009 hearing.

Appellant's trial counsel also submitted an affidavit in which he stated that he knew a court reporter was present for this hearing. He further averred:

I requested the court reporter make a record of the October 16, 2009 hearing and the court reporter was supposed to be recording the pre-trial hearing in [the prior cause number] and I believe at the time of the hearing and I still believe today that the court reporter was recording the pre-trial hearing in [the prior cause number] on October 16, 2009.

He also opined that a record of the hearing would be significant in determining appellant's appeal.

Pursuant to our abatement order, the trial court held a hearing regarding the missing record. The court explained that its practice is to hold a pretrial hearing at which the court hears probable cause, discusses the potential punishment ranges with the defendant, and discusses any plea bargain offers that have been made. The court noted that the docket sheet for October 16, 2009, stated "OTR Wong Lee," which is the court's shorthand for "on the record." The trial court stated that its usual practice is to conduct these hearings on the record, but, on this occasion, it was possible that everyone assumed that Lee was recording the hearing, but the court "may not have specifically told [Lee] that that's what [the court wishes] to do and he did not [record the hearing]."

The trial court specifically found Lee to be a credible person and that "based on [Lee's] affidavit and the way that he keeps records and the way the court reporters keep records in general, there's simply no substantiation for a claim that there was a record made that was subsequently destroyed or disregarded or that he intentionally didn't take down the record." The court noted that this was not a situation of the court refusing defense counsel's request to have the hearing recorded, but merely that the docket entry was wrong and "[f]or whatever reason [the hearing] was not taken down."

The trial court also stated that defense counsel did not make a request for the October 16, 2009 hearing to be recorded and that every time the court holds such a

hearing, its policy is for the hearing to be on the record "at [its] request." The court further noted that defense counsel did not do anything "to block [the recording] from happening" and stated its belief that nothing that happened in the hearing "has any application whatsoever to any point on appeal." The court concluded that because the record "was never created in the first instance, then obviously it would not have been lost or destroyed."

### Sufficiency of Evidence

In his first issue, appellant contends that the State did not present sufficient evidence that he intentionally and knowingly failed to verify his registration information during his required verification period.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim.App.2010). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks*, 323 S.W.3d at 899; *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex.Crim.App.2008). A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App.2000), *overruled on other grounds, Laster v. State*, 275 S.W.3d 512 (Tex.Crim.App. 2009); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) (holding jury can choose to disbelieve witness even when witness's testimony is uncontradicted). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007). We afford almost complete deference to the jury's determinations of credibility. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex.Crim.App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim. App.2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

### B. Failure to Comply with Sex Offender Registration Requirements

A person commits the offense of failure to comply with sex offender registration requirements if he "is required to register and fails to comply with any requirement of" Chapter 62 of the Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 62.102(a) (Vernon 2006); *Green v. State*, 350 S.W.3d 617, 621 (Tex.App.-Houston [14th Dist.] 2011, no pet. h.); *Varnes v. State*, 63 S.W.3d 824, 829 (Tex.App.-Houston [14th Dist.] 2001, no pet.) ("If a convicted sex offender fails to meet any of his or her requirements under the statute, the statute imposes criminal liability on him or her for that failure."). Article 62.051(a) requires a person with a "reportable conviction" to register with "the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days." TEX. CODE CRIM. PROC. ANN. art. 62.051(a) (Vernon Supp. 2011). A person who has been convicted of two or more "sexually violent offenses" is required to register at least once "in each 90–day period following the date the person first registered under [Chapter 62] to verify the information in

the registration form maintained by the authority for that person." *Id.* art. 62.058(a). "[A] person complies with a requirement that the person register within a 90-day period following a date if the person registers at any time on or after the 83rd day following that date but before the 98th day after that date." *Id.*

■ Generally, "[s]ince no state of mind is specified for article 62 offenses, proof that the defendant acted intentionally, knowingly, or recklessly is sufficient." *Ford v. State,* 313 S.W.3d 434, 438 (Tex. App.-Waco 2010), *rev'd on other grounds,* 334 S.W.3d 230 (Tex.Crim.App.2011); *see also* Tex. Penal Code Ann. § 6.02(c) (Vernon 2011) (providing that, if definition of offense does not prescribe culpable mental state and one is required, "intent, knowledge, or recklessness suffices to establish criminal responsibility"). When the indictment alleges that a defendant "intentionally or knowingly" failed to register as a sex offender, we review the record to determine if the State presented sufficient evidence of the defendant's intentional or knowing failure. *See Ballard v. State,* 149 S.W.3d 693, 695 & n. 1 (Tex.App.-Austin 2004, pet. ref'd) (conducting factual sufficiency review of whether defendant intentionally or knowingly failed to register when indictment alleged these culpable mental states); *Varnes,* 63 S.W.3d at 832 ("Although the sex offender registration statute does not expressly require proof of a mental state for prosecution of a failure to register, the indictment in this case alleged that Varnes intentionally and knowingly failed to register."). "The Texas courts which have reviewed other convictions under Chapter 62 for sufficiency have treated the *mens rea* requirement in the indictments or charges as going to the actual knowledge of the defendant's duty to register." *Varnes,* 63 S.W.3d at 832.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code Ann. § 6.03(a) (Vernon 2011). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

■ It is undisputed that appellant was aware of his duty to verify his registration information every ninety days and that he failed to successfully verify his information during his August 2008 verification period. Appellant contends that the State did not present sufficient evidence that he "intentionally and knowingly" failed to verify his registration information because there is no evidence that he received notice that the registration office had moved locations.

Officer Suarez, Sergeant Kuschel, and Billie Jean Hopes all testified that the registration office mailed a letter to all sex offenders within HPD's jurisdiction that the office was moving from the downtown location to a substation on Mykawa Road and that all future verification meetings would occur at the Mykawa address. Sergeant Kuschel testified that the office did not use certified or registered mail to send the letters for cost reasons and that some of the letters were returned to the office. In these cases, the returned letters were kept in the particular offender's file. Appellant's file did not contain a returned letter.

Officer Suarez, Sergeant Kuschel, and Hopes also all testified that the officers who worked the security desk at the down-

town station after the registration office relocated were informed of the relocation and were given copies of the letters that had been mailed to distribute to any offenders who mistakenly arrived at the downtown station for verification. Sergeant Kuschel testified that he personally observed front-desk personnel at the downtown station give a copy of the letter to an offender who appeared downtown for verification and that the front-desk personnel did not inform offenders that HPD would contact them at a later date regarding the new location. Hopes testified that, after the office's relocation, she spoke with an offender who originally reported to the downtown location for verification, and he presented a copy of the letter that he received from the officer working at the front desk. Sergeant Kuschel also testified that any offenders who called the office requesting information about the relocation were told the office's new location.

Appellant testified that he never received any notice or letter from HPD informing him of the new location of the registration office. He further testified that he went to the downtown location "around [August] 11th" to verify his registration information, and, after he told the officer working at the front desk why he was there, he was informed that the registration office had moved. He testified that this officer did not give him a copy of a letter and did not tell him the new location of the office; rather, this officer only told him that HPD would mail him a letter containing the new office information. He also stated that he called the registration office and Sergeant Kuschel on several occasions, but no one ever answered his calls and he never received a response.

Faced with this conflicting testimony, the jury, as the fact finder, could have chosen to believe the testimony of Officer Suarez, Sergeant Kuschel, and Hopes over appellant's account of events. *See Brooks,* 323 S.W.3d at 899 (noting that jury is sole judge of witnesses' credibility and weight to be given to their testimony); *Bartlett,* 270 S.W.3d at 150 (noting that jury is "exclusive judge of the facts proved"); *Rodriguez v. State,* 45 S.W.3d 685, 688 (Tex.App.-Fort Worth 2001) (holding, in failure to comply with sex offender registration requirements case, that "the jury chose not to believe Appellant's testimony, which was within its discretion"), *aff'd,* 93 S.W.3d 60 (Tex.Crim.App.2002). We defer to the jury's determinations of credibility and resolve all inconsistencies in the evidence in favor of the verdict. *See Lancon,* 253 S.W.3d at 705; *Curry,* 30 S.W.3d at 406.

We therefore hold that, when viewing the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that appellant had notice of the new registration location and that he intentionally and knowingly failed to verify his registration information, in violation of the sex offender registration requirements.

We overrule appellant's first issue.

### Judicial Vindictiveness

In his second issue, appellant contends that the trial court improperly punished him for exercising his right to a jury trial when it made a pre-trial plea offer of four years' confinement in exchange for his guilty plea but then ultimately assessed punishment at twenty years' confinement. The State responds that appellant did not preserve this complaint for appellate review because he failed to raise the issue of judicial vindictiveness or otherwise object to his sentence at the time the trial court assessed punishment. We agree with the State.

■ To preserve a complaint for appellate review, the complaining party must make a timely request, objection, or motion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. TEX.R.APP. P. 33.1(a)(1)(A). In *Neal v. State*, the Court of Criminal Appeals held that the defendant failed to preserve his claim of prosecutorial vindictiveness for appellate review when the defendant did not raise this issue in a pre-trial written motion or otherwise assert his claim before the trial court. *See* 150 S.W.3d 169, 180 (Tex.Crim.App.2004) ("Because appellant never presented his prosecutorial vindictiveness claim in the trial court, he failed to preserve this issue for appellate review.").

Here, the trial court made a pre-trial plea offer of four years' confinement in exchange for appellant's guilty plea.[4] Appellant rejected this offer, expressed his desire to proceed to a jury trial, and elected that the trial court assess punishment

in the event of a conviction. After the jury convicted appellant, the trial court heard testimony during the punishment phase from the victim of his reportable sex offenses. During argument, defense counsel stated, "[W]e're asking the Court to assess punishment in this case somewhere in the second degree [felony] range, minimum two, maximum [twenty]." The trial court ultimately assessed punishment at twenty years' confinement. Appellant did not: (1) object to this sentence; (2) give any reason why this sentence should not be pronounced against him; (3) argue that the trial court could not assess this sentence because it had made a previous plea offer of four years' confinement; or (4) otherwise raise a claim of judicial vindictiveness at any point before the trial court.

We follow the rationale of *Neal,* and conclude that, to preserve his complaint for appellate review, appellant was required to raise his claim of judicial vindictiveness before the trial court by timely request, objection, or motion.[5] *See id.;*

4. Although appellant does not specifically complain about the propriety of the trial court's plea offer to him, we note that the Court of Criminal Appeals has discouraged this practice. In *Perkins v. Third Court of Appeals*, the Court of Criminal Appeals stated, "Although Texas trial judges are not expressly prohibited by statute or any rule of law from participating in a plea bargaining session, this Court has nevertheless suggested that a trial judge should not participate in any plea bargain agreement discussions until an agreement has been reached between the prosecutor and the defendant." 738 S.W.2d 276, 282 (Tex.Crim.App.1987) (citing *Ex parte Williams*, 704 S.W.2d 773, 777 n. 6 (Tex. Crim.App.1986)). The court rationalized that "the trial judge should always avoid the appearance of any judicial coercion or prejudgment of the defendant since such influence might affect the voluntariness of the defendant's plea." *Id.; Jennings v. State*, 754 S.W.2d 389, 391 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd) ("We agree with the language discouraging judicial involvement in plea ne-

gotiations in Texas Court of Criminal Appeals cases relied on by appellant."). Although the issue of whether the trial court erred in making a plea offer to appellant is not before us, our opinion in this case should not be read as approving of the trial court's actions in making this offer.

5. In two unpublished memorandum opinions, the Tyler Court of Appeals and the Texarkana Court of Appeals applied the reasoning of *Neal* to claims of judicial vindictiveness and held that, to preserve error, a defendant must raise the issue of judicial vindictiveness before the trial court. *See Thomas v. State*, No. 12-07-00048-CR, 2007 WL 4216459, at *2 (Tex. App.-Tyler Nov. 30, 2007, no pet.) (mem. op., not designated for publication); *Rosborough v. State*, No. 06-06-00237-CR, 2007 WL 2033762, at *2 (Tex.App.-Texarkana July 17, 2007, no pet.) (mem. op., not designated for publication). Both courts concluded that, although the issue was judicial vindictiveness instead of prosecutorial vindictiveness, there was "no reason that an allegation of judicial

*see also* TEX.R.APP. P. 33.1(a)(1)(A). We hold that because appellant did not raise his claim of judicial vindictiveness before the trial court or otherwise object to the trial court's sentence, appellant failed to preserve this complaint for appellate review.

■ We overrule appellant's second issue.[6]

### Failure to Record Pre-Trial Hearing

Finally, in his third issue, appellant contends that he is entitled to a new trial because a "significant portion of the trial court transcript"—the October 16, 2009 hearing during which the trial court made its plea offer to appellant—is unavailable, and "the absent record of the trial court's plea offer affects and hinders appellate review of Appellant's judicial vindictiveness complaint."

Government Code section 52.046 requires an official court reporter, on request, to attend all sessions of court and furnish a transcript of the reported evidence or other proceedings. TEX. GOV'T CODE ANN. § 52.046(a) (Vernon 2005). The Court of Criminal Appeals has held that a defendant must object to the court reporter's failure to record a portion of the trial proceedings to preserve error. *See Valle v. State*, 109 S.W.3d 500, 508–09 (Tex. Crim.App.2003); *Velazquez v. State*, 222 S.W.3d 551, 556–57 (Tex.App.-Houston

---

vindictiveness should not also require the same preservation of error as does an allegation of prosecutorial vindictiveness." *Rosborough*, 2007 WL 2033762, at *2; *see also Thomas*, 2007 WL 4216459, at *2 ("Although Appellant's complaint is of vindictiveness by the trial court rather than the prosecutor, we see no reason why [Texas] Rule [of Appellate Procedure] 33.1(a) would not apply."). In both *Thomas* and *Rosborough*, the issue was whether the trial court acted in a vindictive manner by improperly ordering sentences for multiple offenses to be served consecutively, rather than concurrently. *See Thomas*, 2007 WL 4216459, at *1; *Rosborough*, 2007 WL 2033762, at *1. Both courts held that because the defendants did not raise the issue of vindictiveness at the sentencing hearing, did not object to the trial court's order that the sentences be served consecutively, and did not suggest to the trial court that it was violating due process by its order, the defendants failed to preserve the issue for appellate review. *See Thomas*, 2007 WL 4216459, at *2; *Rosborough*, 2007 WL 2033762, at *2.

**6.** Moreover, even if appellant had preserved this complaint, we agree with the State that the presumption established in *North Carolina v. Pearce* is not applicable to this case. In *Pearce*, the United States Supreme Court concluded that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear [in the record]." 395

U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969), *overruled in part by Alabama v. Smith*, 490 U.S. 794, 801, 109 S.Ct. 2201, 2205, 104 L.Ed.2d 865 (1989) (holding that *Pearce* presumption of judicial vindictiveness does not apply when trial judge imposes greater penalty after remand and full trial than was imposed after prior guilty plea). We have recognized that the *Pearce* presumption of judicial vindictiveness applies "in cases where judges assess harsher sentences *after retrial following successful appeal.*" *Wilson v. State*, 810 S.W.2d 807, 810 (Tex.App.-Houston [1st Dist.] 1991, no pet.) (emphasis added). Here, the trial court's decision to assess punishment at twenty years' confinement is the original sentence in this case, made after the State re-indicted appellant and added an enhancement paragraph and after the trial court heard relevant evidence during the punishment phase of the trial. There has been no "new trial" after a successful appeal. Thus, appellant cannot demonstrate that the trial court was "vindictive" in imposing its sentence. *See Thomas*, 2007 WL 4216459, at *3 ("Here, there is no 'new trial' and, therefore, Appellant cannot show that the trial court was vindictive when it ordered that her sentences be served consecutively."); *Rosborough*, 2007 WL 2033762, at *2 ("Here, there has not been a 'new trial'; this appeal arises from the first and only trial of the instant case. Therefore, there can be no showing that the trial court was vindictive when imposing the complained-of sentence.").

[14th Dist.] 2007, no pet.) (holding that complaint that court reporter failed to record bench conferences was not preserved for appellate review because defendant did not object to lack of court reporter's presence at conferences).

Here, although appellant did not object to the court reporter's failure to record the October 16, 2009 hearing, the record reflects that, until the trial court reviewed the court reporter's affidavit in preparation for the abatement hearing, both the trial court and trial counsel believed that the court reporter had recorded the October 16, 2009 hearing. In his affidavit, trial counsel stated his continuing belief that the court reporter had recorded the hearing.

Appellant urges us to analyze this complaint under Texas Rule of Appellate Procedure 34.6(f), which provides that an appellant is entitled to a new trial when a reporter's record is either lost or destroyed and certain other circumstances are present. *See* TEX.R.APP. P. 34.6(f). Under this rule, an appellant is entitled to a new trial due to a lost or destroyed reporter's record when: (1) the appellant timely requested a reporter's record; (2) without the appellant's fault, a significant portion of the reporter's notes, records, or electronic recordings have been lost or destroyed; (3) the lost or destroyed portion is necessary to the appeal's resolution; and (4) the lost or destroyed portion cannot be replaced by agreement of the parties. *Id.* Appellant alternatively argues that, if we do not apply Rule 34.6(f), we should analyze the court reporter's failure as constitutional error under Texas Rule of Appellate Procedure 44.2(a) "because the type of error purportedly unavailable for appellate review involves judicial vindictiveness," which "represents structural error and requires automatic reversal." If the error at issue is constitutional in na-

ture, we must reverse a judgment of punishment unless we determine beyond a reasonable doubt that the error did not contribute to the punishment assessed. TEX.R.APP. P. 44.2(a). We disregard all non-constitutional errors that do not affect an appellant's substantive rights. TEX. R.APP. P. 44.2(b).

■ At the abatement hearing, the trial court expressly found that no record of the October 16, 2009 hearing had ever been created, and, thus, because the record had never been created in the first place, it could not have been lost or destroyed. Regardless of whether we analyze this issue under Rule 34.6(f) and regardless of which harm standard pursuant to Rule 44.2 we apply, appellant cannot demonstrate his entitlement to relief. To receive a new trial under Rule 34.6(f), appellant must demonstrate that the missing portion of the record is "necessary to the appeal's resolution." *See* TEX.R.APP. P. 34.6(f). Appellant argues that this record is necessary to the resolution of his appeal because the trial court discussed its four-year plea bargain offer at this hearing, and "[t]here can be little question that the trial court's discussions about her four year plea offer would shed light on Appellant's judicial vindictiveness complaint." As we have already held, however, appellant failed to preserve his judicial vindictiveness complaint for appellate review, and, even if he had preserved his complaint, the judicial vindictiveness doctrine is inapplicable to this case. The relevant portion of the record for determining this issue is the record of the punishment phase of the trial, during which the trial court made its sentencing decision by assessing punishment at twenty years' confinement and defense counsel did not object to this sentence or assert a claim of vindictiveness. This portion of the record is available. The record of the October 16, 2009 hear-

ing, during which the trial court made its plea offer, is not necessary to resolving appellant's issues on appeal.

Because we decide appellant's vindictiveness issue based on the record of the punishment hearing, and the record of the October 16, 2009 hearing is not necessary to our determination that the vindictiveness issue was not preserved, we conclude that appellant is not entitled to reversal under the "lost or destroyed" record provision of Rule 36.4(f) or under either of the harm standards of Rule 44.2.

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.