**Opinion issued December 22, 2022**



In The

# Court of Appeals

### For The

# First District of Texas

————————————

## NO. 01-21-00494-CR

————————————

### THOMAS LEE ALEXANDER, III, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Case No. 19CR2458

## MEMORANDUM OPINION

A jury found appellant, Thomas Lee Alexander, III, guilty of the felony

offense of failure to comply with the registration requirements applicable to sex

offenders.[1]  After finding true the allegations in two enhancement paragraphs that appellant had twice been previously convicted of felony offenses, the jury assessed his punishment at confinement for forty years.  In three issues, appellant contends that the evidence is legally insufficient to support his conviction and the trial court erred in denying his motion for directed verdict and in instructing the jury.

We affirm.

## Background

In 1996, appellant was convicted of the felony offense of sexual assault of a child.[2]

On October 18, 2019, a Galveston County Grand Jury, in trial court cause number 19CR2458, issued a true bill of indictment (the "2019 indictment"), alleging that appellant, on or about May 14, 2019,

> while being a person required to register with the local law enforcement authority in the county where [appellant] resided or intended to reside for more than seven days, to-wit: Brazoria County, because of a

---

[1]    *See* TEX. CODE CRIM. PROC. ANN. art. 62.102(a), (c).

[2]    *See* TEX. PENAL CODE ANN. § 22.011(a)(2).  During trial, the trial court admitted into evidence a "summary" from the Texas Department of Public Safety ("DPS") related to appellant, which noted appellant's 1996 conviction for the felony offense of sexual assault of a child and his duty to register as a sex offender for the remainder of his lifetime.  *See* TEX. CODE CRIM. PROC. ANN. arts. 62.001(6)(A) (defining offense of sexual assault of child as "sexually violent offense"), 62.101(a)(1) (imposing lifetime duty to register for person with reportable conviction for sexually violent offense).  The duty to register includes a requirement that a sex offender notify the State of the address where the sex offender resides. *See id.* art. 62.051(a), (c)(1–a) (instructing that registration must include "the address at which the person resides or intends to reside" for more than seven days).

2

reportable conviction for [s]exual [a]ssault of a [c]hild, intentionally or knowingly fail[ed] to register with the local law enforcement authority in said county.[3]

Later, on March 16, 2021, a Galveston County Grand Jury issued a true bill of indictment, in the same trial court cause number (the "2021 reindictment"), alleging that appellant, on or about May 14, 2019,

> while knowing that he was required to register under [Texas Code of Criminal Procedure] [c]hapter 62 . . . because of a reportable conviction or reportable adjudication based upon [s]exual [a]ssault [o]f [a] [c]hild, and while intending to change address, fail[ed] to comply with a requirement of [c]hapter 62, by failing to report in person not later than the seventh day before the intended change of address to the local law enforcement authority designated as [appellant's] primary registration authority by [DPS], namely [the] Galveston Police Department ["(GPD")] and by failing to report to the community supervision and corrections department officer supervising [appellant], namely, Officer R. Pearcy, and by failing to provide the law enforcement authority and the officer with [appellant's] anticipated move date and new address.

The 2021 reindictment also alleged that appellant, on or about May 14, 2019,

> while knowing that he was required to register under [Texas Code of Criminal Procedure [c]hapter 62 . . . because of a reportable conviction or reportable adjudication based upon [s]exual [a]ssault of a [c]hild, and while failing to move on or before an anticipated move date or not moving to a new address previously provided to a law enforcement authority, fail[ed] to comply with a requirement of [c]hapter 62, by failing to report to the local law enforcement authority designated as [appellant's] primary registration authority by [DPS], namely [the GPD], and by failing to explain to the law enforcement authority any

---

3    The 2019 indictment also alleged that previously, on June 25, 2004, appellant was convicted of the felony offense of failure to comply with the registration requirements applicable to sex offenders in trial court cause number 0982190 in the 339th district court of Harris County, Texas.

3

change in the anticipated move date and intended residence, and [appellant] failed to provide this required report within seven days after the anticipated move date and then at least weekly after that seventh day, and [appellant] failed to report to the community supervision and corrections department officer supervising [appellant] at least weekly during the period in which [appellant] had not moved to the intended residence.

(Emphasis omitted.)  Further, the 2021 reindictment alleged that previously, on October 5, 2011, appellant was convicted of the felony offense of failure to comply with the registration requirements applicable to sex offenders in trial court cause number 1307635 in the 337th district court of Harris County.  And on September 14, 2014, appellant was convicted for the felony offense of failure to comply with the registration requirements applicable to sex offenders in trial court cause number 1415700 in the 183rd district court of Harris County.

At trial, GPD Sergeant S. Papillion testified that in 2017, she was the GPD sex offender registration compliance officer.  Her job was to "make sure that the sex offenders" within the GPD's jurisdiction "came in" to her office and "registered" for the DPS Sex Offender Registry as required by the terms of their status as sex offenders.

As to the registration process for a sex offender, Sergeant Papillion explained that an individual subject to the sex offender registry requirements "had to call [her] office" and schedule an appointment.  Sex offenders were required to register either annually, every ninety days, or every thirty days, depending on the applicable

4

statutory requirements. During Papillion's appointment with a sex offender, she "would go over" a written list of the duties imposed on the sex offender by DPS. She would read each duty with the sex offender and the sex offender would write his initials by each duty to confirm that he understood it. The sex offender also "had to provide [his] right thumbprint" on the paperwork. And she would advise the sex offender that if he did not understand the duty, he should not initial it and let her know that he did not understand so that she could explain it to him. If the sex offender confirmed that he understood by writing his initials by each duty, she "would give [him] a copy, upload a copy into the system, and give [him] a blue card that [he was] supposed to carry with them at all times." She "would write [the sex offender's] next registration date on there, and [he] would go."

Sergeant Papillion noted that she had previously met with appellant so that he could complete the sex offender registration process. While viewing appellant's Texas Sex Offender Registration Program Prerelease Notification Form, a copy of which the trial court admitted into evidence at trial, Papillion explained that appellant had a "lifetime" duty to register and was required to verify his residence annually on his birthday. The Texas Sex Offender Registration Program Prerelease Notification Form stated that Texas Code of Criminal Procedure chapter 62 "required [appellant] to register as a sex offender." And appellant signed the form, in October 2016, acknowledging:

5

I am required to register with the local law enforcement authority in any municipality (chief of police) where I reside or intend to reside for more than seven days. If my residence is not in a municipality, I must register with the local law enforcement authority of the county (sheriff) where I reside or intend to reside for more than seven days. Registration must be completed not later than the 7th day after the date of arrival in the municipality or county. The local law enforcement authority or the centralized registration authority, as designated by a commissioner's court in the municipality or county I reside in will be my primary registration authority.

Appellant also acknowledged that:

Not later than the 7th day before I move to a new residence in this state or another state, I must report in person to my primary registration authority . . . and inform that authority and officer of my intended move. If my new residence is located in this state, not later than the 7th day after changing address, I must report in person and register with the local law enforcement authority in the municipality or county where my new residence is located. If my new residence is located in another state, not later than the 10th day after the date I arrive in the other state, I must register with the law enforcement agency that is identified by [DPS] as the agency designated by that state to receive registration information. If I do not move to an intended residence, not later than the 7th day after my anticipated move date, I shall report to my primary registration authority and to any supervising officer supervising me.

And appellant acknowledged that his "failure to comply with any requirements imposed" by Texas Code of Criminal Procedure chapter 62 was "a felony offense." The Texas Sex Offender Registration Program Prerelease Notification Form informed appellant that he had to verify his address annually on his birthday for the remainder of his lifetime.

The trial court also admitted into evidence, during Sergeant Papillion's testimony, a copy of appellant's Texas Department of Public Safety Sex Offender

Registration Form, which appellant executed during a visit with Papillion in October 2016. Appellant signed the Texas Department of Public Safety Sex Offender Registration Form, affirming that he had been "notified and underst[ood]" that he had "a duty to register as a sex offender in Texas" and that the "failure to abide by the[] requirements could subject [him] to criminal prosecution, pursuant to Texas Code of Criminal Procedure chapter 62." (Emphasis omitted.) The Texas Department of Public Safety Sex Offender Registration Form informed appellant that he needed to verify his address annually. Further, on the Texas Department of Public Safety Sex Offender Registration Form, appellant acknowledged each of his registration duties, including:

> I am required to register with the local law enforcement authority of the municipality ([c]hief of [p]olice) where I reside or intend to reside for more than seven days. If my residence is not in a municipality, I must register with the local law enforcement authority of the county ([s]heriff) where I reside or intend to reside for more than seven days. Registration must be completed not later than the 7th day after the date of arrival in the municipality or county. The local law enforcement authority in the municipality or county I reside in will be my primary registration authority. The duration of my duty to register is for the period of time indicat[ed] on this registration form.

Appellant also acknowledged that:

> Not later than the 7th day before I move to a new residence in this state or another state, I must report in person to my primary registration authority . . . and inform that authority and of my intended move. If my new residence is located in this state, not later than the 7th day after changing address, I must report in person and register with the local law enforcement authority in the municipality or county where my new residence is located. If my new residence is located in another state,

not later than the 10th day after the date I arrive in the other state, I must register with the law enforcement agency that is identified by [DPS] as the agency designated by that state to receive registration information. If I do not move to an intended residence, not later than the 7th day after my anticipated move date, I shall report to my primary registration authority and to any supervising officer supervising me.

And appellant acknowledged that his "failure to comply with any requirements imposed" by Texas Code of Criminal Procedure chapter 62 was "a felony offense."

Sergeant Papillion noted that in February 2017, appellant made an appointment with her to tell her that he was moving to Rosharon, Brazoria County, Texas.

GPD Sergeant R. Pearcy testified that he became the GPD's sex offender registration compliance officer in February 2017. Pearcy explained that DPS's "Sex Offender Registry Program produces a series of updates and supplemental reports throughout the year" that provide information about the status of individuals in Texas who are subject to the sex offender registry requirements. "[T]he supplemental report comes about once a month." When a sex "offender is out of compliance for a period of time, depending on the circumstances," the supplemental report will have a notice that such sex offender "has not complied" in a specific "number of days."

Sergeant Pearcy further explained that if a sex offender is listed on the supplemental report as "out of compliance" and the GPD is the sex offender's primary registration authority, he will first "check the Galveston County Jail [and]

8

the Texas Department of Criminal Justice to see" if the sex offender has been incarcerated. Because Texas has 254 counties, Pearcy "can't reasonably check all" of them, but he also looks at the five counties surrounding Galveston County, Texas "to see if [he] can locate [the sex offender] in some kind of incarceration situation." If he does not find the sex offender that way, he runs a search through the "criminal information databases" made available by the Texas Criminal Information Center ("TCIC")[4] and the National Criminal Information Center ("NCIC").

According to Sergeant Pearcy, on or about May 7, 2017, he noticed "that [appellant] was on" DPS's Sex Offender Registry Program's supplemental report "for not being in compliance." Pearcy first checked with the Brazoria County Sheriff's Office but did not locate appellant in Brazoria County. Then, using the TCIC and NCIC databases, Pearcy "did a complete nationwide search" using appellant's name and other "identifiers," and he "was able to" locate appellant in Indianapolis, Indiana. Appellant had completed an Indiana Sex Offender Registration Form on April 10, 2018, indicating that he had resided at a particular street address in Indianapolis as of June 29, 2017. Pearcy did not learn that appellant was residing in Indiana until 2019.

---

[4] The TCIC is a "statewide criminal information database used by law enforcement agencies." *Peacock v. State*, 77 S.W.3d 285, 287 (Tex. Crim. App. 2002).

Sergeant Pearcy explained that when an individual subject to the sex offender registry requirements moves from the GPD's jurisdiction to another location, the sex offender "has a duty within seven days of that date to report" to the local law enforcement authority in the new location and register there. "If he is unable to complete that move" within the seven-day period, the individual must "report back to the [GPD]" sex offender registration compliance officer to let the officer know that "[he] didn't make the move" and to "make [the officer] aware of the circumstances as to whether" the GPD needed to reinstate him on its registry or whether he was "looking for another place to live" outside of Galveston County. The sex offender registration compliance officer then would note the sex offender's status in the GPD's records.

According to Sergeant Pearcy, appellant, on February 9, 2017, told Sergeant Papillion that he was moving to Rosharon. Thus, he had a duty "within seven days of that date to report to Rosharon, . . . the Brazoria County Sheriff's Office" and "register with them." If appellant could not complete his move within seven days, he was required "to report back to" the GPD and let the GPD know that he "didn't make the move" or that he "was unable to make the move." Appellant also failed to annually report to the GPD in April 2017. It was appellant's responsibility to set up an appointment with the GPD and "come in and update his registry file" in April 2017.

10

After the State rested, appellant moved for directed verdict. In his motion, appellant argued that the evidence showed that his failure to comply with the registration requirements applicable to sex offenders, if any, occurred in 2017, and as a result, the 2021 reindictment was invalid because it did not charge an offense that occurred within the applicable three-year statute of limitations period.[5] Appellant also argued that the 2019 indictment did not toll the statute of limitations period because the 2021 reindictment "charge[d] a different offense" than the 2019 indictment, which had alleged that appellant had "fail[ed] to register with the local law enforcement authority in" Brazoria County. The trial court denied appellant's motion for directed verdict, noting that appellant had not presented "anything" to show that a reindictment "[wa]s not going to toll the statute" of limitations or that the 2021 reindictment "d[id]n't relate back" to the 2019 indictment.

## Statute of Limitations

In his first issue, appellant argues that the trial court erred in denying his motion for directed verdict because "prosecution was barred under the residual three year statute of limitations." In his second issue, appellant argues that the evidence is legally insufficient to support his conviction because the record "affirmatively

---

[5] *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(8); *see also id.* art. 62.102(c).

11

establishes that the [2021] [re]indictment upon which [a]ppellant was tried was barred by [the statute of] limitation[s]."

Because a challenge to a denial of a motion for directed verdict is a challenge to the legal sufficiency of the evidence to support a conviction, we consider appellant's first and second issues together. *See Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003); *Williams v. State*, 582 S.W.3d 692, 700 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). In reviewing whether the evidence is legally sufficient to support a conviction, we consider all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988); *Jeansonne v. State*, 624 S.W.3d 78, 91 (Tex. App.—Houston [1st Dist.] 2021, no pet.). We defer to the responsibility of the fact finder to resolve conflicts fairly in testimony, weigh the evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. That said, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

12

A person commits the offense of failure to comply with the requirements applicable to sex offenders "if the person is required to register and fails to comply with any requirement of" Texas Code of Criminal Procedure chapter 62. Tex. Code Crim. Proc. Ann. art. 62.102(a); *Robinson v. State*, 466 S.W.3d 166, 170 (Tex. Crim. App. 2015); *Harris v. State*, 364 S.W.3d 328, 334 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Chapter 62 requires sex offenders who intend to change addresses to report to their primary registration authority, not later than seven days prior to the intended change, and provide their registration authority with their "anticipated move date and new address." Tex. Code Crim. Proc. Ann. art. 62.055(a). Further, a sex offender must report to the local law enforcement authority where his new residence is located, not later than seven days after moving or the first day the local law enforcement authority allows him to report, and provide "proof of identity and proof of residence." *Id.* And, if a sex offender, who reported an intended address change to his primary registration authority, does not move on or before the anticipated move date or does not move to the new address provided to the authority, the sex offender must, not later than seven days after the anticipated moved date, and "not less than weekly after that seventh day," report to his primary registration authority and provide an explanation to the authority regarding any changes to the anticipated move date and intended residence. *See id.* art. 62.055(e).

13

Here, appellant does not challenge the legal sufficiency of the evidence as to the substantive elements of the offense of failure to comply with the requirements applicable to sex offenders. Instead, he argues only that the trial court erred in denying his motion for directed verdict and that the evidence is legally insufficient to support his conviction because the evidence affirmatively established that the 2021 reindictment, on which appellant was tried, alleged conduct that occurred in 2017 and, as a result, the three-year statute of limitations period applicable to the offense of failure to comply with the requirements applicable to sex offenders barred his prosecution for that offense. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(8) (three-year statute of limitations applies to felony offenses not listed in Texas Code of Criminal Procedure article 12.01(1)–(7)), 62.102(c) (offense of failure to comply with requirements applicable to sex offenders constitutes felony offense).

In determining whether the limitations period has run in this case, we look to Texas Code of Criminal Procedure article 12.05(b), which provides that "[t]he time during the pendency of an indictment, information, or complaint shall not be computed in the period of limitation." *See id.* art. 12.05(b). Under article 12.05(b), "a prior indictment tolls the statute of limitations . . . for a subsequent indictment when both indictments allege the same conduct, same act, or same transaction." *Hernandez v. State*, 127 S.W.3d 768, 774 (Tex. Crim. App. 2004); *see also State v. West*, 632 S.W.3d 908, 912 (Tex. Crim. App. 2021) ("In order for a prior indictment

14

to provide sufficient notice such that the defendant would preserve facts necessary to defending against the subsequent indictment, the two indictments must involve the same event."); *Marks v. State*, 560 S.W.3d 169, 170 (Tex. Crim. App. 2018). Thus, whether appellant can prevail on his statute-of-limitations argument depends on whether the 2019 indictment and the 2021 reindictment allege the same conduct, same act, or same transaction.

Appellant argues that the 2019 indictment did not toll the applicable statute of limitations because it charged a different location for the alleged offense—Brazoria County, and not Galveston County, as alleged in the 2021 reindictment. This argument relies on appellant's view that the two indictments charged him with two distinctly separate events, namely, that the 2019 indictment charged him with a failure to register in Brazoria County, whereas the 2021 reindictment charged him with a failure to report his status in Galveston County. But the Texas Court of Criminal Appeals has held that the failure of a sex offender to report an intended and then completed change of address is "one crime per move," meaning that the unit of prosecution is "one offense for each change of address." *Young v. State*, 341 S.W.3d 417, 426 (Tex. Crim. App. 2011). "The focus of the statute is on giving notification to [the] law enforcement [authority] and not the means by which a sex offender failed to do so." *Id.*; *see also Robinson*, 466 S.W.3d at 170 (failure to register offense "is

15

a circumstances-of-conduct offense" and gravamen of failure-to-register offense "is the duty to register").

Appellant, after expressing his intent to move from Galveston County, had the duty to register within seven days, whether he moved to Brazoria County, changed his mind about moving to Brazoria County and remained in Galveston County, or decided to move to a third location. *See* TEX. CODE CRIM. PROC. ANN. art. 62.051(a), (e). Thus, the offense alleged in the 2019 indictment and the offense alleged in the 2021 reindictment are based on the same duty and his failure to register or report a single change of address. *See Robinson*, 466 S.W.3d at 171 ("Although all circumstances-of-conduct offenses naturally contain an additional conduct element, the conduct itself is not necessarily an additional gravamen.").

The evidence of appellant's conduct adduced at trial confirms that the offense alleged in the 2019 indictment and the offense alleged in the 2021 reindictment concern the same conduct, act, or transaction. In February 2017, appellant told Sergeant Papillion of his intent to move to Rosharon. Papillion informed appellant that "he ha[d] seven days to contact" the local law enforcement authority in Brazoria County. And she told sex offenders subject to the registration requirements that if they changed their mind about moving to a new location, they had "seven days, but [they] ha[d] to contact [her] to let [her] know that [they were] still staying in Galveston [County], or if [they were] moving elsewhere." Yet appellant took no

16

action to comply with the registration requirement in the seven days following his meeting with Papillion. He did not register with local law enforcement in Brazoria County and made no further contact with the GPD. In 2019, Sergeant Pearcy noticed that appellant was out of compliance with the Texas sex offender registration requirements. He searched the TCIC and the NCIC databases for appellant's whereabouts and located him in Indianapolis.

Appellant asserts that his appeal is "controlled primarily by" *Tita v. State*, 267 S.W.3d 33 (Tex. Crim. App. 2008), but he does not explain how *Tita* applies to his case, and we find it inapposite. In *Tita*, the State filed five indictments under five separate trial court cause numbers, all charging the defendant with aggregated theft against the same complainant. 267 S.W.3d at 34. The first and second indictments, filed in March 2005, both charged the defendant with theft of more than $200,000 but the first indictment alleged that the theft occurred between "April 1, 1999, and continuing through August 30, 2000" and the second indictment alleged that it occurred "on or about June 1, 1999, and continuing through October 30, 2000." *Id.* The third and fourth indictments, filed in May 2005, charged the defendant with aggregated theft of more than $100,000, but less than $200,000, but the third indictment alleged that the offense occurred "on or about April 1, 1999, and continuing through August 30, 2000," and the fourth indictment alleged that the offense occurred "on or about June 1, 1999, and continuing through October 30,

2000." *Id.* at 34–35. The fifth indictment, filed in July 2006, alleged that the defendant, "on or about June 28, 1999 and continuing through October 31, 2000," "unlawfully appropriated more than $200,000." *Id.* at 35.

The defendant filed a pretrial motion to dismiss the fifth indictment, asserting that the time between the offense alleged and the filing of the fifth indictment was more than the five-year statute of limitations applicable to the offense and, as a result, "the prosecution of the offense [wa]s barred by [the statute of] limitations." *Id.* The State responded, stating that the offense alleged in the fifth indictment was tolled by earlier indictments filed under the other trial court cause numbers, which were timely filed within the statute of limitations. *Id.* The trial court denied the defendant's motion, and the State brought the defendant to trial under the fifth indictment. *Id.* At the close of the evidence, the defendant renewed his statute-of-limitations complaint in a motion for directed verdict, arguing that he was entitled to acquittal because the State was barred from prosecuting the case based on the statute of limitations. *Id.* at 36. The trial court denied the defendant's motion. *Id.*

On appeal, the defendant challenged the trial court's denial of his pretrial motion to dismiss, asserting that the State was required to plead sufficient facts in the fifth indictment demonstrating that the statute of limitations had been tolled. *Id.* at 36–37. The Texas Court of Criminal Appeals observed that it "appeared from the

face" of the fifth indictment that prosecution of the defendant under the facts alleged "was barred by the applicable five-year statute of limitations." *Id.* at 38. Thus, under such circumstances, the court concluded that the State was required to plead in the fifth indictment that the prior indictments tolled limitations if it wished to avoid the bar to prosecution.[6] *Id.*

Here, in contrast to *Tita*, the face of the 2021 reindictment, which was filed on March 16, 2021 and alleged an offense date of "on or about May 14, 2019," does not indicate on its face that the prosecution of appellant was time-barred. *See* TEX. CODE CRIM. PROC. ANN. art. 21.02(6) (indictment deemed sufficient if the "time mentioned" is "some date anterior to the presentment of the indictment and not so remote that the prosecution of the offense is barred by limitation"); *cf. Tita*, 267 S.W.3d at 37 (trial court erred in denying defendant's pretrial motion to dismiss indictment because "it appeared from the face of the indictment that a prosecution thereunder was barred" by applicable statute of limitations and State failed to plead

---

[6] The Texas Court of Criminal Appeals remanded the case to the Fourteenth Court of Appeals for a harm analysis on this issue. *Tita v. State*, 267 S.W.3d 33, 39 (Tex. Crim. App. 2008). On remand, the court of appeals held that any error in convicting the defendant under the faulty indictment was harmless because the lack of tolling language in the July 2006 indictment "did not deprive [the defendant] of notice of the conduct or offense for which he was being prosecuted," did not "impair his ability to prepare an adequate defense at trial," and "the inclusion or exclusion of a tolling paragraph could have no possible impact on future double jeopardy considerations." *Tita v. State*, No. 14-06-00736-CR, 2009 WL 1311813, at *2–3 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (mem. op., not designated for publication).

any tolling facts). Because of this material difference, *Tita* does not affect our analysis in this case.

Considering all the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant failed to comply with the registration requirements applicable to sex offenders in Texas Code of Criminal Procedure chapter 62 and the applicable statute of limitations did not bar the State from prosecuting appellant for that offense. Thus, we hold that the trial court did not err in denying appellant's motion for directed verdict and the evidence is legally sufficient to support appellant's conviction.

We overrule appellant's first and second issues.

## Jury Charge Error

In his third issue, appellant argues that the trial court erred in failing to instruct that "the statute of limitations was not tolled by [defendant's] absence" from Texas because "[appellant] left the state before" he was indicted.

A trial court must prepare a jury charge that accurately states the law applicable to the charged offense. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). But a trial court has no duty to include an instruction on a defensive issue—even when it is raised by the evidence—unless the defendant requests it or objects to its omission. *Posey v. State*, 966 S.W.2d 57, 59–60, 62 (Tex. Crim. App. 1998); *Flores v. State*, 573 S.W.3d 864, 867 (Tex. App.—Houston [1st

Dist.] 2019, pet. ref'd).  Absent a timely and proper request or objection, the defendant cannot claim error on appeal based on the trial court's failure to instruct the jury on a defensive issue.  *See Zamora v. State*, 411 S.W.3d 504, 513 (Tex. Crim. App. 2013) (defensive issues "may be forfeited if not preserved at trial"); *see also Mays v. State*, 318 S.W.3d 368, 382–83 (Tex. Crim. App. 2010) ("The purpose of the *Posey* rule is to prevent a party from 'sandbagging' the trial judge by failing to apprise him, and the opposing party, of what defensive jury instructions the party wants and why he is entitled to them.").

The Texas Court of Criminal Appeals has held that the statute of limitations is a defensive issue.  *See Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998); *see also Ex parte Heilman*, 456 S.W.3d 159, 169 (Tex. Crim. App. 2015) (reaffirming *Proctor* and holding that limitations defenses, except those involving legislative ex post facto violations, are forfeitable rights).  Because the record does not show that appellant requested an instruction on the statute-of- limitations tolling issue that he raises on appeal, we conclude that the trial court did not err in failing to submit such an instruction.  *See Posey*, 966 S.W.2d at 62.[7]

---

[7] Because we find that the trial court did not err in instructing the jury, we need not conduct a harmless error analysis under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).  *See Zamora v. State*, 411 S.W.3d 504, 513 (Tex. Crim. App. 2013) (trial court's sua sponte duty under *Almanza* to submit charge setting forth law applicable to case "does not apply to defensive issues, which may be forfeited if not preserved at trial"); *see also* TEX. R. APP. P. 47.1.

21

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.

Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Countiss and Rivas-Molloy.

Do not publish.  *See* TEX. R. APP. P. 47.2.