Yeary, J., filed a dissenting opinion.
DISSENTING OPINION
Keasler, J., filed a dissenting opinion, in which Hervey and Newell, JJ., joined.
Under Article 12.05(b) of the Code of Criminal Procedure,"[t]he time during the pendency of an indictment ... shall not be computed in the period of limitation."[1] This means that, so long as "an indictment" is pending against the defendant, the relevant limitation period is put on pause. We have rejected the idea that "any indictment for any unrelated offense" will allow the State to take advantage of this provision.[2] Otherwise, "a person could be continually indicted for any offense that the State felt inclined to charge," and the State could thereby perpetually *172 skirt the statute of limitations.[3] So the question is: What kinds of indictments will give rise to tolling under Article 12.05(b) ?
In Hernandez v. State , the defendant was initially charged with possession of amphetamine.[4] More than three years later, the State filed another indictment alleging possession of methamphetamine. This was a different statutory offense from the one originally alleged, but we held that, pursuant to Article 12.05(b), the three-year limitation period for the subsequent indictment had been tolled by the pendency of the first. Acknowledging that the legislative history weighed "in favor of reading Article 12.05(b) broadly,"[5] we began by laying out the two interpretive extremes in order to find a possible middle ground. First, for the reasons explained above, we declined to interpret the phrase "an indictment" to mean "any indictment for any unrelated offense."[6] But we also declined to interpret that phrase to require both indictments to allege the same offense, for we noted that this requirement was present elsewhere in the Code and conspicuously absent from Article 12.05(b).[7] Somewhere between these two extremes, we ultimately decided that, under Article 12.05(b), a prior indictment tolls the limitation period for a subsequent indictment "when both indictments allege the same conduct, same act, or same transaction."[8]
We did not, in Hernandez , undertake to provide precise definitions of the terms "conduct," "act," or "transaction." But the kinds of considerations the Court relied upon in adopting this test shed some light. Specifically, we sought to ensure that a defendant subjected to a second indictment would still receive "adequate notice so that he may prepare a defense."[9] This concern may be satisfied, we said, "if the prior indictment gives adequate notice of the substance of the subsequent indictment."[10] For, "[i]f the defendant has adequate notice of a charge, he can preserve those facts that are essential to his defense."[11] We also quoted approvingly of a federal district court opinion that emphasized "the factual basis of an indictment" over the "specific charge alleged" in determining whether a second indictment is proper under the federal analogue to Article 12.05(b).[12]
Applying the Hernandez test to the facts of this case, I disagree that the two sets of indictments alleged impermissibly divergent conduct. Both sets of indictments targeted the same three incidents, on the same three dates, arising from the same set of facts, made criminal within the same Private Security Act.[13] "[R]eading Article 12.05(b) to allow the tolling of the statute of limitations for an indictment charging a similar offense does not undermine the purpose of the statute of limitations."
*173 [14] Though not identical, the offenses in this case are undeniably similar, and that is all that Hernandez requires. I do not contest that the two theories of guilt contained within these indictments would have required different proof. But this will almost always be true when different statutory violations are alleged. Hernandez makes it abundantly clear that whether two offenses are elementally different is not the proper test for tolling under Article 12.05(b).[15] So, instead of restricting our analysis to the particular wording of the indictments, we ought to look at their underlying factual basis[16] -Marks's providing private-security services without the proper license.
With these facts in mind, it seems highly unlikely that Marks, charged with one violation of the Private Security Act, would have sought and preserved any different defensive evidence had he known that the State would ultimately prosecute him for an alternate Private-Security-Act violation bearing a strong resemblance to the first. After all, Marks's primary defensive theories were that (1) the Private-Security-Act licensing requirements did not apply to him because, at the time he engaged in private-security services, he was a full-time peace officer; and (2) even if he had not met the requirements of being a full-time peace officer, he believed in good faith that he had. The first of these defensive theories, if credited, would have acquitted him of both the initial, guard-company allegation and the subsequent, armed-security allegation.[17] And the second defensive theory likely would not have helped him with respect to either alleged offense, since the Private Security Act's penalizing statute does not prescribe a culpable mental state with respect to either of these discrete licensing requirements.[18] It follows that any harm resulting from the State's untimely amendment should not be attributed to the switch from a guard-company allegation to an armed-security allegation, because this switch had no absolutely effect on either of Marks's defensive theories. This is a strong indication that Marks would have understood both indictments to reach the same core conduct or act.
Even if I am wrong about that, I would conclude that the indictments at the very least alleged the same transaction, as each corresponding indictment alleged the same date. It is true that both indictments contain "on or about" language, potentially broadening the time period in which the State might prove an offense at trial. But this was also true in Hernandez ,[19] and Hernandez did not describe "on or about" language as preventing a finding that two indictments reach the same transaction.[20] Furthermore, even assuming that the phrase "on or about" casts doubt over whether two same-date-alleging indictments refer to the same transaction, there were two sets of three indictments in this case, and all three corresponding indictments match up day-for-day. This makes it exceedingly unlikely that Marks was initially preparing to defend against allegations pertaining to one span of time, and *174 then was surprised to learn that he would have to defend against allegations pertaining to another. With three day-for-day matches, it is far more likely that Marks understood both indictments to target the same transaction.
Because they often have "nothing to do with the guilt or innocence of the persons charged," Hernandez sought to limit the impact that "procedural errors and defects in form" would have on the State's ability to re-indict an offender.[21] To that end, Hernandez instructs us to construe Article 12.05(b)"broadly."[22] Today's opinion takes a decidedly narrow view of what that statute permits. I respectfully dissent.
DISSENTING OPINION
Yeary, J., filed a dissenting opinion.
When this Court came to say, as a matter of "first impression," what the law is with respect to Article 12.05(b) of the Texas Code of Criminal Procedure, it first set out what it acknowledged was the "literal text" of that provision:
(b) The time during the pendency of an indictment, information or complaint shall not be computed in the period of limitations.
Hernandez v. State , 127 S.W.3d 768, 770 (Tex. Crim. App. 2004) (quoting TEX. CODE CRIM. PROC. art. 12.05(b) ). We immediately conceded that, "[o]n its face, Article 12.05(b) does not require that subsequent indictments allege the same offense or even be based on the same conduct." From these premises, one would have naturally expected the Court's next observation to be that the statute requires no interpretation on our part at all. Its literal meaning is quite plain from its face: The pendency of any indictment, information or complaint will toll the limitations period-without qualification.[1]
If the meaning of a statute is plain, then courts do not engage in "construction" of that statute; they simply implement that plain meaning. See Boykin v. State , 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ("Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.") (internal quotation marks and citations omitted). But not so with Hernandez . Instead of implementing what we all but admitted was the plain import of the statute on its face, we immediately jumped to a conclusion that something must be missing: "The Article provides no guidance as to how the indictments must be related to trigger the tolling provision." 127 S.W.3d at 770.[2] We did this despite the fact that there is nothing in the literal language of the statute to suggest that there must be any "relatedness" at all between one charging instrument and another already-pending charging instrument before tolling of limitations may be triggered.
It is simple enough to implement the statute without imposing any notion of "relatedness"
*175 upon it, and there is no particular reason (at least none that emanates from the statutory language itself) to suppose that we ought to do so. The Court in Hernandez complained that " Boykin does not tell us what to do when the legislature leaves a gap and provides no guidance about how to apply a statute." 127 S.W.3d at 771. The Court then proceeded to fill its perceived "gap" in the statute "[b]ased on our review of the public policy implications[.]" Id. at 774. But there was no such "gap" in Article 12.05(b). The Court may have found it difficult, as a matter of policy, to stomach the breadth of the statutory language on its face, but that did not create a vacuum for the Court to rush in and fill. What Boykin tells us to do with a plain statute is to take it at its literal word, come what may.[3]
We have reiterated since Boykin that the "seminal rule of statutory construction is to presume that the legislature meant what it said." State v. Vasilas , 187 S.W.3d 486, 489 (Tex. Crim. App. 2006). Moreover, "we interpret the Legislature's statutes, not its intentions." Getts v. State , 155 S.W.3d 153, 158 (Tex. Crim. App. 2005). "In adhering to this rule, we show our respect for the legislature and recognize that if it enacted into law something different from what it intended, it would amend the statute to conform to its intent." Vasilas , 187 S.W.3d at 489.
It is beyond the scope of the Court's proper authority to "rescue" the Legislature from what we perceive to be "its drafting errors, and to provide for what we might think ... is the preferred result." Getts , 155 S.W.3d at 158 & n.11 (citing Lamie v. United States Tr. , 540 U.S. 526, 542, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ). See also TEX. CONST. art. II (separation of powers); Boykin , 818 S.W.2d at 786 & n.4 (when courts stray beyond the plain language of a statute, they inappropriately invade "the lawmaking province of the Legislature"). This case powerfully illustrates why we should resist all temptations to overlook that limitation. The Court in Hernandez obviously preferred as a matter of policy that two charging instruments should somehow be "related" to each other before one that is pending may serve to toll the limitations period for an offense charged in another. The plain reach of the statute's tolling provision is *176 far greater, however, and there is no source in the statutory language to justify implementation of the Court's limiting policy preference.
Nonetheless, today the Court finds itself engaging in a debate regarding the proper construction of language that the Court itself adopted in Hernandez to fill a perceived policy "gap." The question it wrestles with is: What does it mean to say that a pending indictment and a subsequent indictment "allege the same ... transaction"? 127 S.W.3d at 774. The Court thus struggles to construe, not the language of the statute itself, but instead a court-generated phrase that we ourselves plugged into a statute that needed no "construction" to begin with.
The competing opinions today can agree on no particular definition of "same transaction"-a phrase we have found elusive in other contexts. E.g. , Rubino v. Lynaugh , 770 S.W.2d 802, 803-05 (Tex. Crim. App. 1989) (noting the inconsistent applications of a "continuous act or transaction" standard for applying the defunct "carving doctrine" for double jeopardy purposes). They simply arrive at different intuitive destinations, without providing much that is useful to facilitate future application of the statutory scheme. Rather than take a side in this debate, I would revisit Hernandez , acknowledging that it was wrong at its inception, it is not proving particularly workable, and it should be overruled. See Proctor v. State , 967 S.W.2d 840, 845 (Tex. Crim. App. 1998) ("[W]hen governing decisions of this Court are unworkable or badly reasoned, we are not constrained to follow precedent.").
Applying the plain language of the statute, I would hold that the pending indictment in this case served to toll the limitations period. On that basis I agree with Judge Keasler. Appellant was not harmed by the amendments to the existing indictments. Therefore, like Judge Keasler, I respectfully dissent.

Tex. Code Crim. Proc. art. 12.05(b).

Hernandez v. State , 127 S.W.3d 768, 772 (Tex. Crim. App. 2004) (emphasis in original).

Id.

127 S.W.3d at 769.

Id. at 771.

Id. at 772 (emphasis omitted).

Id.

Id. at 774.

Id. at 772 (citing United States v. Gengo , 808 F.2d 1, 4 (2d Cir. 1986) ; United States v. O'Neill , 463 F.Supp. 1205, 1208 (E.D. Pa. 1979) ).

Id.

Id.

Id. at 773 (citing United States v. Hill , 494 F.Supp. 571, 573 (S.D. Fla. 1980) ).

See Tex. Occ. Code ch. 1702; ids="4158423" index="37" url="https://cite.case.law/f-supp/494/571/#p573">id. § 1702.001 ("This chapter may be cited as the Private Security Act.").

Hernandez , 127 S.W.3d at 772.

See ids="9286933" index="39" url="https://cite.case.law/sw3d/127/768/#p774">id.

Id. at 773 ("[T]he factual basis of an indictment, rather than the specific charge alleged, is crucial in determining whether the second indictment is proper[.]").

See Tex. Occ. Code § 1702.322(1).

See id. § 1702.388(a).

Hernandez v. State , 74 S.W.3d 73, 74 (Tex. App.-Eastland 2002), rev'd , 127 S.W.3d 768 (Tex. Crim. App. 2004).

Hernandez, 127 S.W.3d at 773-74.

See id. at 771 (citations omitted).

Id.

"[A]n indictment, information, or complaint" need only be pending to toll the limitations period-there is no other qualifying language in the provision. The word "an" is a variation of the indefinite article "a," which may mean "any" in context. Webster's II New College Dictionary 1999, at 1. Nothing about the context in which it is used in Article 12.05(b) suggests it means anything else.

Later, the Court would observe similarly that "we are faced with the task of rounding out the legislature's enactment of Article 12.05(b) because the legislature provided no guidance about how the prior and subsequent indictments should be related to toll the statute of limitations period." 127 S.W.3d at 771.

The Court in Hernandez suggested, without explicitly holding, that to afford the statute its admittedly plain meaning would result in an absurdity-presumably to justify its intervention to construe the statute notwithstanding its plain import, as authorized by Boykin . See 818 S.W.2d at 785 (holding that, where plain meaning leads to absurd consequences, a court may deviate). We said:
If we were to read "an indictment" to mean any indictment for any unrelated offense, then a person could be continually indicted for any offense that the State felt inclined to charge once an initial indictment was filed. This application would defeat the purpose of the statute of limitations, which requires the State to exercise due diligence in obtaining and presenting a formal accusation of an offense against a person.
Hernandez , 127 S.W.3d at 772. This constituted a substantial exaggeration. Any offender who has never before been formally charged would still enjoy the benefit of the legislative grace of the statutory deadlines for filing formal criminal charges embodied in Chapter 12 of the Code of Criminal Procedure. See Ex parte Matthews , 933 S.W.2d 134, 136 (Tex. Crim. App. 1996), overruled on other grounds by Proctor v. State , 967 S.W.2d 840 (Tex. Crim. App. 1998) ("Statutes of limitation are acts of grace in that the sovereign surrenders its right to prosecute[.]"). Statutes of limitations do not reflect fundamental rights: "Indeed, at common law there was no limitation as to the time within which offenses could be prosecuted." Proctor v. State , 967 S.W.2d 840, 844 (Tex. Crim. App. 1998). There is nothing inherently absurd about the Legislature's decision to extend the scope of its largesse only to those offenders who have no other current formal charges pending.