

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0236-20

**THE STATE OF TEXAS**

**v.**

**TIMOTHY WEST, Appellee**

---

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY

---

**WALKER, J., delivered the opinion of the Court, in which KELLER, P.J., and RICHARDSON, NEWELL, KEEL, and MCCLURE, JJ., joined. YEARY, J., filed a dissenting opinion. HERVEY and SLAUGHTER, JJ., dissented.**

### O P I N I O N

Knowingly possessing, obtaining, or attempting to possess a controlled substance listed in Schedule I, II, III, or IV by misrepresentation, fraud, forgery, deception, or subterfuge is a felony offense with a three-year statute of limitations. TEX. HEALTH & SAFETY CODE Ann. § 481.129(a)(5)(A), (d)(1)–(2); TEX. CODE CRIM. PROC. Ann. art. 12.01(8).[1] The question in this case

---

[1] If the controlled substance is listed in Schedule V, the offense is a Class A misdemeanor with a two-year statute of limitations. TEX. HEALTH & SAFETY CODE Ann. § 481.129(d)(3); TEX.

is whether the statute of limitations is tolled by the pendency of an initial indictment charging a completely different drug than the subsequent indictment and charging not only possession, but also attempting to possess that drug by all of the possible statutory manners and means. The court of appeals concluded that, although the drugs alleged were different, both indictments employed the same language mirroring the statute, and therefore the statute of limitations was tolled. We reverse the judgment of the court of appeals.

## I — Background

On September 13, 2016, Timothy Mark West, Appellee, was charged with three counts of knowingly possessing or attempting to obtain the drug **Tramadol** by misrepresentation, fraud, forgery, deception, or subterfuge. *See* TEX. HEALTH & SAFETY CODE Ann. § 481.129(a)(5)(A). The indictment alleged that the three counts were committed on or about January 21, 2015; April 2, 2015; and June 5, 2015.

On June 5, 2018, three years to the day after the last alleged offense, the State refiled the indictment against Appellee, containing the same allegations word-for-word except that the alleged drug was changed from **Tramadol** to **Oxycodone**, and the State filed a motion to dismiss the original indictment which was granted on June 13. Appellee moved to quash the second indictment, and, in a June 21 hearing, the trial court granted the motion because the second indictment lacked tolling paragraphs. On June 26, more than three years after the alleged offenses, the State filed a third indictment containing the same allegations but also including tolling paragraphs as to each count. The trial court granted Appellee's motion to quash the third indictment.

The State appealed, and the court of appeals reversed the trial court's ruling granting the

---

CODE CRIM. PROC. Ann. art. 12.02(a).

motion to quash. *State v. West*, 597 S.W.3d 4, 10 (Tex. App.—El Paso 2020). The court of appeals concluded that the statute of limitations was tolled by the pendency of the first indictment which had alleged Tramadol. *Id.* We granted Appellee's petition for discretionary review.

## II — Pending Indictments Can Toll the Statute of Limitations

The Code of Criminal Procedure requires an indictment to indicate, on its face, that the prosecution is not barred by the applicable statute of limitations. *Mercier v. State*, 322 S.W.3d 258, 263 (Tex. Crim. App. 2010); TEX. CODE CRIM. PROC. Ann. art. 21.02(6). However, the Code provides that "[t]he time during the pendency of an indictment, information, or complaint shall not be computed in the period of limitation." TEX. CODE CRIM. PROC. Ann. art. 12.05(b).

Although Article 12.05(b) says "an indictment," in *Hernandez v. State*, we concluded that not just any indictment will toll the statute of limitations. 127 S.W.3d 768, 772 (Tex. Crim. App. 2004). Otherwise, "a person could be continually indicted for any offense that the State felt inclined to charge once an initial indictment [is] filed." *Id.* This would defeat one of the purposes of a statute of limitations, which is to require the State to exercise due diligence in obtaining and presenting a formal accusation against a person. *Id.*

Instead, we held that "a prior indictment tolls the statute of limitations . . . for a subsequent indictment when both indictments allege the same conduct, same act, or same transaction." *Id.* at 774. "A subsequent indictment is barred by the statute of limitations if it broadens or substantially amends the charges in the original indictment." *Id.* at 773.

A number of factors led us to this conclusion, including the fundamental requirement that an indictment must give a defendant adequate notice to prepare a defense. *Id.* at 772; *see also State v. Moff*, 154 S.W.3d 599, 603 (Tex. Crim. App. 2004). Additionally, we noted that the United States

Supreme Court recognized several purposes for a statute of limitations, one of which is to protect defendants from having to defend against charges that are brought when the basic facts have been obscured by the passage of time. *Hernandez*, 127 S.W.3d at 772 (quoting *Toussie v. United States*, 397 U.S. 112, 114–15 (1970)).[2] To ensure that the defendant can preserve those facts that are essential to his defense, the defendant must be given adequate notice of a charge. *Id.* "Allowing the prior indictment to toll the statute of limitations would not defeat the purposes of the statute of limitations if the prior indictment gives adequate notice of the substance of the subsequent indictment." *Id.*

In *Hernandez*, the prior indictment charged the defendant with possession of amphetamine, whereas the subsequent indictment charged him with possession of methamphetamine. *Id.* at 769. We held that the prior indictment tolled the three-year statute of limitations that would have otherwise barred the subsequent indictment. *Id.* at 774. Both indictments alleged the same conduct—possession of a controlled substance—and the names methamphetamine and amphetamine referred to the same controlled substance found on the defendant. *Id.* "Although the proof involved in identifying the drug would be slightly different, every other element would rest on the same proof"—proof that the defendant possessed a controlled substance. *Id.*

### III — Not Like *Hernandez*

The court of appeals determined that Appellee's case was close enough to *Hernandez* that the result in that case controls the result in this case. *West*, 597 S.W.3d at 8–10. Specifically, the

---

[2] Statutes of limitations also "minimize the danger of official punishment because of acts committed in the far-distant past" and "may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Hernandez*, 127 S.W.3d at 772 (quoting *Toussie*, 397 U.S. at 114–15).

court of appeals concluded that both indictments alleged the same conduct because the allegations "shared the same factual basis and thereby 'fairly alerted'" Appellee "to the need to preserve any essential defensive facts." *Id.* at 9. This was so, according to the court of appeals, because:

> (1) the prior indictment alleged three counts of knowingly possessing or attempting to possess a controlled substance, to-wit: tramadol, by misrepresentation, fraud, forgery, deception, or subterfuge, on or about the dates of January 21, 2015, April 2, 2015, and June 5, 2015, for each count, respectively; and (2) the subsequent indictment charged the same conduct but merely changed the controlled substance from tramadol to oxycodone.

*Id.*

While there are similarities between this case and *Hernandez*, key differences exist. The court of appeals seems to have understood *Hernandez* to mean that, if both the prior and the subsequent indictments contain the same allegations word-for-word except for the drug named, both indictments therefore allege the same conduct, and the statute of limitations is tolled. That may be true in a case like *Hernandez*. But the same cannot be said when the statute involved can be violated in several different ways, and the indictments merely mirror the statute alleging nearly all of those ways the defendant could have committed the offense. Concluding that the indictments in such a situation nevertheless allege the same conduct, same act, or same transaction misses the point of the *Hernandez* rule.

In this case, the court of appeals on the one hand noted the indictments against Appellee "differ from those in *Hernandez*, first, because they allege not just possession but attempted possession." *Id.* at 8. This distinction "could theoretically allow for greater permutations in the combination of facts constituting the particular actions committed" by Appellee. *Id.* Appellee "theoretically could have become liable under the third indictment for three entirely new and discrete

actions." *Id.*

Yet on the other hand the court of appeals simply declared that the "gravamen" and "umbrella of conduct" were the same because both indictments alleged the same statutory language. *Id.* at 8–9. Although it recognized the wide range of possible conduct alleged by the initial indictment and purported to follow *Hernandez*, the court of appeals's application of *Hernandez* is contrary to how it should be applied.

In order for a prior indictment to provide sufficient notice such that the defendant would preserve facts necessary to defending against the subsequent indictment, the two indictments must involve the *same* event. *Hernandez*, 127 S.W.3d at 774. Given that we did not, in *Hernandez*, undertake to define "same," "same" should be given its common and ordinary meaning.[3] Thus, if what matters under *Hernandez* is whether the same conduct, same act, or same transaction is alleged in both indictments, those alleged conducts, acts, or transactions must be one and the same event.

First, we begin by noting that, while it may seem counter-intuitive, the fact that the prior indictment alleges the same dates as the subsequent indictment is not determinative given our case law on date allegations. "It is well settled that the 'on or about' language of an indictment allows the

---

[3] *See Same*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/same (last visited August 12, 2021) ("1a: resembling in every relevant respect; b: conforming in every respect—used with *as*; 2a: being one without addition, change, or discontinuance: IDENTICAL; b: being the one under discussion or already referred to; 3: corresponding so closely as to be indistinguishable; 4: equal in size, shape, value, or importance—usually used with *the* or a demonstrative (such as *that*, *those*) in all senses").

*See also Same*, Dictionary.com, LLC, https://www.dictionary.com/browse/same (last visited August 12, 2021) ( "1. identical with what is about to be or has just been mentioned; 2. being one or identical though having different names, aspects, etc.; 3. agreeing in kind, amount, etc.; corresponding; 4. unchanged in character, condition, etc."); *Same*, *Black's Law Dictionary* (11th ed. 2019) ("Identical or equal; resembling in every relevant respect").

State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *Arcia v. State*, 12 S.W. 599 (Tex. Ct. App. 1889). The dates alleged in an indictment—that the offense was committed "on or about" a particular date—merely puts an accused on notice that he needs to prepare for proof that the event alleged happened at any time within the relevant statutory period of limitations and not just for the date alleged. *Thomas v. State*, 753 S.W.2d 688, 693 (Tex. Crim. App. 1988).[4] In *Marks*, we agreed that using the same dates in subsequent indictments does little, if anything, to show that both indictments refer to the same conduct, act, or transaction:

> [A]lthough the original and amended indictments in each case allege the same date, the indictments use 'on or about' language—so that it is not at all clear that the same transaction, much less the same act or conduct, is being alleged.

*Marks v. State*, 560 S.W.3d 169, 171 (Tex. Crim. App. 2018).

Setting aside the date allegations, the court of appeals's decision, which relied on a simple determination of whether the same statutory language was alleged, did not take into account the fact that the allegations involved in this case allow for separate and discrete (not the same) conduct, acts, or transactions. Here, Appellee was initially charged with knowingly possessing, obtaining, or attempting to possess Tramadol by misrepresentation, fraud, forgery, deception, or subterfuge. *See*

---

[4] Professors Dix and Schmolesky, discussing the "on or about" language, observe that:

> the allegation cannot serve to provide the accused with notice. Practically speaking, the requirement of a date allegation seems to serve only as a vehicle for requiring that the State assert in the charging instrument its intention to prove commission of the offense at such a time as renders the offense free from any limitation bar.

42 DIX & SCHMOLESKY, Texas Practice Series, Criminal Practice and Procedure § 25:169 (3d ed. 2019).

TEX. HEALTH & SAFETY CODE Ann. § 481.129(a)(5)(A). It should go without saying that possessing a drug is different from attempting to possess a drug. It should also go without saying that misrepresentation, fraud, forgery, deception, and subterfuge all constitute different manners and means. Possessing Tramadol after deceiving a doctor into writing a prescription for the drug describes completely different conduct, acts, or transactions from attempting to possess Oxycodone by forging a doctor's prescription and presenting that forgery to a pharmacist.

Accordingly, this case is not like *Hernandez*. The first indictment in *Hernandez* alleged possession of amphetamine; the second indictment alleged possession of methamphetamine. *Hernandez*, 127 S.W.3d at 769. Although methamphetamine and amphetamine are different substances, "the names methamphetamine and amphetamine" used in the two indictments "refer to the same controlled substance" found on Hernandez, leading to his indictment for possession of a controlled substance. *Id.* at 774. We reasoned that "[a]lthough the proof involved in identifying the drug would be slightly different, every other element would rest on the same proof." *Id.*

Our choice of the word "would" is important, because the facts involved with the conduct alleged in the first indictment would be nearly identical to those involved with the conduct alleged in the subsequent indictment. Regardless of whether Hernandez allegedly possessed amphetamine or methamphetamine, the alleged conduct remains the same that he possessed a controlled substance. Therefore, the initial indictment in *Hernandez* provided the type of clear notice necessary to identify and preserve the facts and witnesses essential to defend against the subsequent indictment.

But in Appellee's case, the indictments do not allege the same conduct because under the factual allegations of Appellee's indictments there may not even be an actual, physical substance that was seized. A defendant facing such an indictment would not know exactly what conduct he must

defend himself against.

In *Hernandez*, the allegations necessarily overlapped. In Appellee's case, there may or may not be any overlap in the evidence at all between the initial and subsequent indictments. While the first indictment and the subsequent indictment *could* refer to the same event and *could* rest on the same proof, it cannot be concluded that they *would*. Again, in the words of the court of appeals, the indictments against Appellee "differ from those in *Hernandez*, first, because they allege not just possession but attempted possession." *West*, 597 S.W.3d at 8. This distinction "could theoretically allow for greater permutations in the combination of facts constituting the particular actions committed" by Appellee. *Id.* Appellee "theoretically could have become liable under the third indictment for three entirely new and discrete actions." *Id.* This case is simply unlike *Hernandez*.

### IV — Notice and Preservation of Defense Evidence

Furthermore, *Hernandez* particularly emphasized the interaction between statutes of limitations and the requirement of notice to the accused in order to prepare a defense. *Hernandez*, 127 S.W.3d at 772. The primacy of notice was illustrated in *Marks*, where the question was whether a prior indictment alleging that the defendant acted as a guard company by providing security services without a proper business license tolled the statute of limitations for a subsequent indictment alleging that the defendant accepted employment as a security officer to carry a firearm without a security officer commission. *Marks*, 560 S.W.3d at 169. If the court of appeals's analysis of Appellee's case—which appears to turn upon a simple question of whether the same statutory language was alleged—was a correct application of *Hernandez*, we would have resolved *Marks* on that basis and held that because the statutory offenses were different, the statute of limitations was not tolled.

Instead, in *Marks* we considered the actual allegations to determine whether both indictments alleged the same conduct, act, or transaction. *Id.* at 170–71. Recognizing that there were some common elements between the two indictments, we also noted the differences and the impact those differences could make to the possible defense. *Id.* at 171. We supposed a potential scenario in which the defendant, facing the prior indictment accusing him of not having a license to be in the guard company business, did in fact have a license and planned to use a defensive strategy revolving around proving up the license. *Id.* "What would make him think that the State was accusing him of (or that he needed to defend against) the allegation that he carried or agreed to carry a firearm without having been personally commissioned to do so?" *Id.* We left open the possibility that the prior indictment, alleging the guard company offense, could contain enough specific facts to make it clear that the prior indictment was in fact alleging the same act, conduct, or transaction as the subsequent indictment alleging the firearm without a security officer commission offense. *Id.* However, the indictments did not contain much in the way of facts—they largely tracked their respective statutes. *Id.*

Under a notice-focused *Hernandez* inquiry as informed by *Marks*, the notice provided by the Tramadol-alleging prior indictment in Appellee's case failed to give him the adequate notice necessary to preserve facts essential to defending against the Oxycodone-alleging subsequent indictment. "[There] is [not] a strong indication that [Appellee] would have understood both indictments to reach the same core conduct or act." *See Marks*, 560 S.W.3d at 173 (Keasler, J., dissenting). The lesson to take from *Marks* is to answer the *Hernandez* inquiry by focusing on whether the defensive strategy to the prior indictment's allegations would have necessarily translated into defenses to the subsequent indictment's allegations.

As was the case in *Marks*, the indictments in this case do not contain enough specific facts to make it clear that the indictments involved the same act, conduct, or transaction. They largely track the statute on which they are based. In the words of *Marks*, based upon the allegation that Appellee possessed or attempted to possess Tramadol, "[w]hat would make him think that the State was accusing him of (or that he needed to defend against)" possessing or attempting to possess Oxycodone? *Id.* at 171 (majority op.).

Here, the State's untimely switch absolutely could have had an effect on the defensive theory. *See id.* at 173 (Keasler, J., dissenting) (arguing that defensive theories were unaffected and that tolling applied). Appellee, charged with possessing, obtaining, or attempting to possess Tramadol by misrepresentation, fraud, forgery, deception, or subterfuge would not necessarily devise a defensive strategy that would also preserve facts and witnesses central to defending charges relating to Oxycodone. A possible defense as to the attempt charge could be to show that he had a valid prescription for Tramadol. This could include preserving his doctor's prescription slips, getting a copy of his medical records kept by his prescribing doctor, and getting statements from his doctor attesting to the validity of the prescription. This defensive strategy would not necessarily include preservation of facts related to Oxycodone, especially if, as argued by defense counsel to the trial court, Appellee was on long-term treatment and prescribed up to fifteen different medications. Faced with the Tramadol-related indictment, what would make Appellee think that he would need to preserve material related to the other fourteen drugs he was on?

This is true even if the defensive theory as to Oxycodone is the same. If the defense to the subsequent Oxycodone allegation is also "my prescription is valid," the doctor who prescribed the Oxycodone may not be the same doctor that prescribed the Tramadol. Facts necessary to preserve

the Oxycodone-related defense would not have been necessarily preserved while preparing against the Tramadol-related accusation.

### V — Conclusion

In conclusion, the "gravamen of law-offending conduct" in each indictment was not necessarily the same. *See West*, 597 S.W.3d at 9. Following the test delineated in *Hernandez*, the subsequent indictment does not necessarily charge the same act, conduct, or transaction as the first. The statute of limitations was not tolled, and the trial court did not err when it granted Appellee's motion to quash. The judgment of the court of appeals is reversed, and we affirm the judgment of the trial court.

Delivered: October 27, 2021
Publish